310 P.2d 513

**J. P. GIBBONS and Virginia L. Gibbons,
Plaintiffs and Respondents,**

v.

**SALT LAKE CITY CORPORATION,
Defendant and Appellant.**

No. 8596.

Supreme Court of Utah.

April 23, 1957.

E. Ray Christensen, City Atty., Homer Holmgren, Donald B. Holbrook, Asst. City Attys., Salt Lake City, for appellant.

Pugsley, Hayes & Rampton, Salt Lake City, for respondents.

WADE, Justice.

The plaintiffs, Mr. and Mrs. Gibbons, respondents here, seek by this action to quiet their title against Salt Lake City to a strip of land 21 feet wide which commences at the northwest corner of the intersection of 21st East Street with 13th South Street and runs north on the west side of 21st East Street for 140.99 feet. Plaintiffs claim this strip is a part of Lot 1, Block 27, Five Acre Plat "C", Big Field Survey in Salt Lake City at the northwest corner of the above mentioned intersection. Defendant, Salt Lake City, appellant here, claims that strip is within the west boundary line of 21st East Street. The location of the boundary line between the west side of 21st East Street and the east side of plaintiffs' property is an important issue in this case.

U. S. Patent to the above described lot and block and the streets at that intersection was issued in 1870 to Henry Hugh Harries and was therein described as the South ½ of the Southwest ¼ of Section 10, Township 1 South, Range 1 East, containing 80 acres. The disputed area is a part of the land granted by that patent. The record does not disclose any express deed, conveyance or dedication of 21st East Street where it adjoins plaintiffs' property to Salt Lake City, although such streets had been platted and probably used as streets since before the patent issued. The record also fails to locate the boundary line between 21st East

Street and plaintiffs' property with reference to any original monuments, corners or boundary lines of the original U. S. Survey or the original plat of this property. Prior to the patent and the government survey of this area a map of Salt Lake City was made in 1867 by Jesse W. Fox, which shows the plaintiffs' land to be in the southeast corner of Lot 1, Block 27, Big Field Survey of Salt Lake City, and bounded on the east by 21st East Street and on the south by 13th South Street. All of the recorded deeds, conveyances and transfers of that property since that time describe this property as a part of that lot, block and survey, and as being so located that the east boundary line is the west boundary line of 21st East Street and the south boundary line as the north boundary line of 13th South Street at that intersection.

The following is a map of this intersection and plaintiffs' property:

The recorded transfers of plaintiffs' property after the patent and prior to August 1, 1936, fail to locate the southeast corner of Lot 1 or the south or east boundary

lines which border on these streets with reference to any known or now ascertainable point. However, a transfer on that date recites in substance that the original southeast corner of said Lot 1, Block 27, Five Acre Plat "C", Big Field Survey is 31.76 feet south and 23.40 feet west from a Salt Lake City Survey monument located in the 21st East—13th South Streets intersection. All subsequent transfers of plaintiffs' property have contained a similar recital. According to that recital the east boundary line of plaintiffs' property and of such Lot 1 and Block 27 and the west boundary line of 21st East Street running north from the northwest corner of this intersection is in accordance with plaintiffs' claim.

The original plat of Jesse W. Fox made in 1867, shows the southeast corner of Lot 1, Block 27, Five Acre Plat "C" to be the northwest corner of the intersection of 21st East and 13th South Streets. Lots 20, 19, 18, 17, 16, 15, 14, 13 and 12 join each other successively on the north Lot 12 being bounded on the north by 9th South Street. The west side of 21st East Street is the east boundary of each of those lots. Thirteen maps each covering a part of this area were received in evidence in addition to two plats which accompanied and were a part of abstracts made of this property. These various plats indicate that these lots are about 287.100 feet wide from north to south and from 759 to 789.33 feet long from east to west. The original Jesse Fox plat shows

21st East Street from Sunnyside Avenue on the north, to the south of 13th South Street to continue from north to south without any jog in the west boundary line from east to west except that north of 9th South Street, 21st East Street is shown to be 8 rods wide but only 4 rods wide south of that intersection. This map shows that the street narrows the same distance on each side but no other map shows such narrowing of that street. There is no dispute that north of where Laird Drive comes into 21st East Street from the west at about the north side of Lot 19, or about 860 feet north of the 13th South Street intersection, the west boundary line of 21st East Street if continued on a straight line to the south until it intersects the 13th South Street intersection would be approximately where plaintiffs claim the boundary line between their property and the street is. So, if the city's claim is correct the west boundary line will jog to the west about 21 feet at that point. On the other hand, none of the maps show a jog to the west on the south side of 13th South Street intersection, but it is clear beyond doubt that the west boundary line of 21st East Street is about 21 feet west of where the plaintiffs claim it to be.

Few of the maps which were made prior to 1932, when the city engineer's office became aware of this problem and definitely tried to fix its maps to show this jog in accordance with its present claim, show such a jog. There is one notable exception in a

map of the county surveyor approved in 1906, which shows a much greater jog than the city claims. From these maps and the evidence on this point, it is clear that the plaintiffs failed to establish where the east boundary line of their property was according to the original survey, and any finding of facts to the effect that such original boundary line was where plaintiffs claim it was is not supported by substantial evidence.

The city contends that the trial court erroneously found or failed to find the following facts: (1) That the plaintiffs and their predecessors had been in undisturbed continuous possession of and have cultivated and occupied such 21-foot strip of land under a claim of right and adverse to the city's claim and the public since the U. S. Patent was granted. (2) That the city has not been in exclusive possession of or used such strip of land during the last 7 years. (3) That the city first used such strip of land as a public street in 1955. (4) And that the court failed to find that the city had been in actual open, exclusive, uninterrupted and continuous possession of such strip of land under a claim of right and adverse to plaintiffs and their predecessors for more than 7 years next prior to the commencement of this action.

In other words, the city complains that the trial court found the issues of fact against it on the question of use and occupation of this strip prior to the commencement of this action. A study of the evidence shows that the only real dispute on the question of evidence is concerned only with the west approximately 12 feet of this strip of land. Plaintiffs' own evidence shows that since the earliest recollections of their main witness, Mrs. Afton Harries Savage, the granddaughter of Henry Hugh Harries, who received U. S. Patent to this land, who had lived on this property during her early childhood and practically all of her life, and who was 61 years old at the time of the trial, plaintiffs' predecessors had maintained a fence which was attached to the east side of a row of large trees with posts in between the trees, about 9 feet west from the boundary line of this 21-foot strip. This fence ran from the northwest corner of 21st East and 13th South Streets intersection about to Emigration Creek, a distance of about 800 feet. Such fence was there until 1955, when it was forcibly removed by the city. The city's witnesses also admitted that such fence was maintained by plaintiffs' predecessors since early 1934, a period of more than 20 years prior to the commencement of this action.

■ It is clear that this fence was maintained and treated by plaintiffs' predecessors as the boundary line between their land and 21st East Street. Immediately east of this fence is a narrow irrigation ditch coming from Emigration Creek to irrigate the lands of plaintiffs and the additional lands of their predecessors. This ditch was about where

the curb and gutter is now established in front of the gas station now on plaintiffs' land and where the curb and gutter would be if extended to the north. Immediately east of the ditch is the west shoulder of 21st East Street just west of the hard surface portion of the street, the west edge of which is about the same place as the east side of the 21-foot strip involved in this action. Within this 9-foot strip there is also a utility pole, street signs, including the stop sign at the intersection, and the gas pipeline which has been laid under the east edge of such strip. Most of the strip is free from vegetation and shrubbery which abundantly covers the ground west of the fence line. There is nothing in the evidence which tends to indicate that plaintiffs have occupied, possessed or used this approximately 9-foot strip of land adversely to the claim of the world or of the city. So the decision of the trial court to the effect that plaintiffs have acquired a title to this 9-foot strip by adverse user is reversed.

On the question of whether the evidence is sufficient to justify the trial court's findings with reference to adverse user of the west approximately 12 feet of this 21-foot strip, there are three disputed issues of fact. The first we have already mentioned. It involves the length of time that plaintiffs' predecessors maintained the fence east of the row of large trees. The second one involves the old dirt footpath running north and south about where a continuation of the sidewalk in front of the gas station would come. The third is whether there was a second fence west of the 21-foot strip prior to 1934.

On the first question, the city's witnesses admit that the east fence has been maintained by plaintiffs and their predecessors from 1934 to 1955, a period of 21 years. The plaintiffs' main witness, Mrs. Afton Harries Savage, testified that the fence east of the row of large trees was there at the time of her earliest recollection. She denied positively that there was a pathway before the city removed the fence to the east of these trees in 1955, which was used by the general public stating that the general public would have to climb over the fence to use it. But she admitted that her family as owners sometimes walked from their house down that way in order to irrigate and cultivate their land. Mr. Tipton, the chief draftsman in the city engineer's office, also described this old pathway as a general path used by the occupants of the Savage home to the north of plaintiffs' property, but he made no claim that the general public used it prior to the time the city moved the fence to the east of the row of large trees. As to the fence which the city claimed was to the west of the 21-foot strip, Tipton testified that it was there in 1932, but had almost disappeared in 1934. Mrs. Savage testified that there never was such a fence within the time of her earliest recollections.

■ As previously noted the city has shown no title to 21st East Street where it adjoins plaintiffs' property. Its only valid claim thereto is based on plaintiffs' failure to establish their title to the disputed strip or on prescription or adverse user. In view of these facts, although the court as we have held, erred in quieting the plaintiffs' title to the part of the disputed strip east of the fence line on the east side of the row of large trees, this does not apply to the part of this strip west of that fence line. As to the west part of this strip the evidence is clear that plaintiffs and their predecessors have possessed, occupied and used it adversely to all the world, including the city, under claim of right, and had it enclosed by a substantial fence and have paid all the taxes assessed against it for more than 20 years. There is no evidence that the city has ever possessed or used it either for a right of way or otherwise, or held any valid claims thereto. Thus plaintiffs have established their ownership to this strip by adverse user for more than 7 years immediately preceding the commencement of this action.

■ Although Section 78–12–13, U.C.A.1953, prohibits a person from acquiring "any right or title in or to any lands held by any" city designated for use as a street, it has no application to this case, for the city has completely failed to show that this land is now or ever has been "held" by the city, as that term is used in this statute. In order for the city to hold property under the above statute, it must have some semblance of title, possession or the right to the use thereof. It is not sufficient to establish a holding by the city for the city engineers to make a survey of the property and destroy a fence which serves as a boundary line between the street and adjoining property and verbally assert that the city is the owner of such property. That is about the extent of the holding by the city of this property

The judgment of the trial court is reversed as to the land lying east of the east side of the fence with directions that the trial court take evidence and determine the location where the east side of that fence was. In all other respects the trial court's judgment is affirmed.

Each side shall bear its own costs.

McDONOUGH, C. J., and CROCKETT, WORTHEN and HENRIOD, JJ., concur.